UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ARP WAVE, LLC, a Minnesota Limited
Liability Company; and ARP
MANUFACTURING, LLC, a Minnesota
Limited Liability Company,

              Plaintiffs,

v.

GARRETT M. SALPETER;
NEUROLOGICAL FITNESS AND
RECOVERY FACILITIES, LLC, a Texas
Limited Liability Company; ARPWAVE
AUSTIN, LLC, a Texas Limited Liability
Company; NEUROLOGICAL FITNESS
EQUIPMENT AND EDUCATION, LLC,
a Texas Limited Liability Company; and
JOHN DOES I-X,

              Defendants.

Case No. 18-CV-2046 (PJS/ECW)

ORDER

---

Jeffrey D. Shewchuk, SHEWCHUK IP SERVICES, LLC; Boris Parker and
Nicholas M. Wenner, PARKER & WENNER, P.A., for plaintiffs.

Kevin Terrazas and John Matthew Murrell, CLEVELAND TERRAZAS PLLC;
John M. Weyrauch and Peter R. Forrest, DICKE, BILLIG & CZAJA, PLLC, for
defendants.

Plaintiffs ARP Wave, LLC and ARP Manufacturing, LLC (collectively

"ARPwave")[1] bring this patent-infringement action against defendants Garrett Salpeter;

---

[1] ARP Manufacturing, LLC and ARP Wave, LLC are "sister compan[ies]."  ECF
No. 1 at ¶ 2.  ARP Manufacturing manufactures the devices that ARP Wave, LLC
distributes.  *Id.*  Because nothing turns on any distinction between the two companies,
the Court will refer to plaintiffs collectively as "ARPwave."

ARPwave Austin, LLC; Neurological Fitness and Recovery Facilities, LLC; and Neurological Fitness Equipment and Education, LLC. In addition to their claims for patent infringement, plaintiffs bring claims for misappropriation of trade secrets and confidential information, breach of contract, conversion, interference with contractual and business relationships, and unjust enrichment.

All defendants have moved to dismiss the patent-infringement claims—and all defendants save Salpeter have moved to dismiss other claims—for lack of proper venue. For the reasons that follow, the Court grants defendants' motion in part and dismisses the patent-infringement claims without prejudice.

## I. BACKGROUND

ARPwave manufactures and distributes devices that electronically stimulate muscles. ECF No. 1 at ¶¶ 1-2. ARPwave's devices—and its treatment system—are designed to help athletes and others to relax and strengthen muscles, recover from injury, and better absorb force. *See id.* at ¶¶ 22, 26.

Salpeter first started using ARPwave's devices in 2006, while playing college hockey. *See id.* at ¶¶ 34-35. Salpeter "had a life-changing experience using the ARPwave system" and "was amazed at the ability of the ARPwave System to bring people back faster from all kinds of injuries and to reverse chronic pain." *Id.* at ¶ 36.

In December 2008, ARPwave and Salpeter entered into a "clinic master lease and license agreement" ("the 2008 agreement"). ECF No. 1 at ¶ 38; ECF No. 1-1. Under the agreement, Salpeter leased various devices from ARPwave and received a license to provide ARPwave's treatment system to the public. ECF No. 1 at ¶¶ 37-38, 42; ECF No. 1-1. Salpeter received training regarding ARPwave's proprietary devices and treatment system in Minneapolis. ECF No. 1 at ¶¶ 43-44. In January 2009, Salpeter registered ARPwave Austin in Texas and marketed the licensed treatment system to the public through ARPwave Austin. *Id.* at ¶¶ 39, 45-46. ARPwave alleges that "Salpeter exercises full dominion, ownership and operational control over [ARPwave Austin]." *Id.* at ¶ 7.

In May 2010, ARPwave Austin and Salpeter executed a new agreement with ARPwave ("the 2010 agreement"). ECF No. 1 at ¶ 50; ECF No. 1-2. This agreement granted Salpeter and ARPwave Austin a five-year lease on a newly developed ARPwave device called the "RX 100," as well as a license to use the associated protocols. *See id.*

Both the 2008 and 2010 agreements contained identical forum-selection clauses, providing (in relevant part) as follows: "Venue for *the enforcement of this Agreement* shall be limited to the Hennepin County, Minnesota, Federal or State District Court to the exclusion of all other courts . . . . " ECF No. 1-1 at p. 5, ¶ 21 and at p. 9, § 7, ¶ 2 (2008

agreement) (emphasis added); ECF No. 1-2 at p. 5, ¶ 21 and at p. 8, § 6, ¶ 2 (2010

agreement) (emphasis added).

In March 2012, Salpeter entered yet another agreement with ARPwave ("the 2012

agreement"). ECF No. 1 at ¶ 55; ECF No. 1-3. This agreement granted Salpeter a

five-year lease on a new ARPwave device called the "POV Sport," as well as a license to

use the associated protocols. ECF No. 1 at ¶¶ 55-56; ECF No. 1-3. The 2012 agreement

also contained a forum-selection clause that was worded somewhat differently from the

forum-selection clauses in the 2008 and 2010 agreements. The forum-selection clause in

the 2012 agreement provided (in relevant part) as follows:

> EACH PARTY CONSENTS TO THE JURISDICTION OF
> ANY STATE OR FEDERAL COURT LOCATED WITHIN
> THE COUNTY OF HENNEPIN, STATE OF MINNESOTA
> AND IRREVOCABLY AGREES THAT *ALL ACTIONS OR*
> *PROCEEDINGS RELATING TO THIS AGREEMENT OR*
> *ANY RELATED AGREEMENTS* MUST BE LITIGATED IN
> SUCH COURTS. EACH PARTY ACCEPTS FOR ITSELF,
> GENERALLY AND UNCONDITIONALLY, THE
> EXCLUSIVE JURISDICTION OF THE AFORESAID
> COURTS AND WAIVES ANY DEFENSE OF FORUM NON
> CONVENIENS.

ECF No. 1-3 at p. 5, ¶ 7.9 (emphasis added).

In this action, ARPwave alleges that Salpeter failed to make the payments

required by the agreements and, following expiration of the agreements, refused to

return the devices leased to him under the agreements. ECF No. 1 at ¶¶ 49, 54, 58.

ARPwave also alleges that Salpeter and the other defendants are still using ARPwave's proprietary devices and treatment system to provide services to members of the public, albeit under another brand name. *See* ECF No. 1 at ¶¶ 61-63. Specifically, ARPwave alleges that Salpeter registered a new LLC in Texas in April 2016 (Neurological Fitness and Recovery Facilities) and that this company is being used to promote the "Neufit" treatment system. *Id.* at ¶ 61. According to ARPwave, the Neufit treatment system "is a converted copy of ARPwave proprietary and patented Systems and technology previously leased and licensed to [Salpeter]." *Id.*

In May 2017, Salpeter registered another new LLC in Texas (Neurological Fitness Equipment and Education). *Id.* at ¶ 62. Both of these new companies (collectively "the Neurological Fitness LLCs") have the same address. *Id.* at ¶¶ 4-5, 61-62. ARPwave alleges that Salpeter "is the current Chief Operating Officer" (as well as a "director and member") of both of the Neurological Fitness LLCs, and that he "exercises full dominion, ownership and operational control over [them]." *Id.* at ¶¶ 4-5, 7.

ARPwave also alleges that defendants are using a device that they refer to as the "Neubie" "to perform . . . methods of electrotherapeutic stimulation, diagnosis, treatment and adjustment" that are "virtually identical" to the treatment system licensed from ARPwave. ECF No. 1 at ¶ 63. ARPwave also alleges that the "Neubie" infringes on three ARPwave utility patents, specifically U.S. Patent No. 8,768,474

(issued in 2014) (*see* ECF No. 1 at ¶¶ 31, 80; ECF No. 1-7), U.S. Patent No. 9,302,102

(issued in 2016) (*see* ECF No. 1 at ¶¶ 32, 81; ECF No. 1-8), and U.S. Patent No. 9,526,892

(also issued in 2016) (*see* ECF No. 1 at ¶¶ 33, 82; ECF No. 1-9).

All of the defendants now move to dismiss ARPwave's patent-infringement

claims for lack of venue.  *See* ECF No. 9; ECF No. 11.  All of the defendants (with the

exception of Salpeter) also move to dismiss ARPwave's other claims for lack of proper

venue.  ECF No. 11 at 9-10; ECF No. 19 at 5.

## II.  ANALYSIS

ARPwave does not seem to dispute that, in the absence of the forum-selection

clauses, venue over this case would not lie in this District.  ARPwave contends,

however, that because of the forum-selection clauses, ARPwave may sue defendants in

this District.  Defendants disagree.  Defendants argue that an entity cannot be bound by

a forum-selection clause in an agreement to which the entity is not a party, and point

out that ARPwave Austin signed only one of the agreements and that neither of the

Neurological Fitness LLCs signed any of the agreements.  Defendants also argue that,

even if all of them are bound by all of the forum-selection clauses, venue over some of

the claims would still not lie in this District, as those claims are not within the scope of

the clauses.

The Court will first address the question of which defendants are bound by the forum-selection clauses, and then the question of which claims fall within the scope of those clauses.

*A. Which Defendants Are Bound By the Forum-Selection Clauses?*

Defendants contend that an entity cannot be bound by a forum-selection clause unless the entity is a party to the agreement containing the clause. Because only Salpeter signed all three of the agreements, defendants argue, only Salpeter is bound by all three forum-selection clauses. ECF No. 11 at 9-10; ECF No. 19 at 5. ARPwave Austin signed only the 2010 agreement and thus contends that it is bound only by the forum-selection clause contained in that agreement. *Id.* And the Neurological Fitness LLCs did not sign any of agreements—indeed, they did not even exist at the time the agreements were signed—and thus they contend that they are not bound by any of the forum-selection clauses. *Id.*

Defendants' argument has surface appeal, but it founders on case law from both federal courts and Minnesota courts[2] holding that a non-party to a contract can be held

_____

[2]The Eighth Circuit has sent mixed signals about whether federal or state law governs the interpretation of a contract's forum-selection clause. *Compare Rainforest Cafe, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003) (stating that it was "inclined to agree" with the parties "that federal law controls the question of whether [the] forum selection clause applies"), *with Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (applying Illinois law when determining whether a forum-selection clause applies). *See also Kleiman v. Kings Point Capital Mgmt.*, LLC, No. 4:17CV2278HEA, 2018 WL 3328012,

(continued...)

bound by the contract's forum-selection clause when that non-party is "'closely related'

to the dispute such that it becomes 'foreseeable' that [the non-party] will be bound."

*Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) (quoting

*Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).  Here, the Court finds that all

of the defendants are so closely related to this dispute that it was foreseeable that they

would be bound by the agreements' forum-selection clauses.

––––––––––––––––––––

(...continued)
at *3 (E.D. Mo. July 6, 2018) (stating that "[t]he Eighth Circuit has not definitively ruled
on whether state or federal law controls when the applicability of a forum selection
clause is at issue," and applying federal law to the question of whether the
forum-selection clause applies to a non-party, because the parties had relied on federal
law).

     Fortunately, this Court has not found—and the parties have not identified—any
difference between the two bodies of precedent.  Federal courts and Minnesota courts
apply the same "closely related" standard.  *Compare Marano Enters. of Kan. v. Z-Teca
Rests., L.P.*, 254 F.3d 753, 757 (holding that a non-signatory can be bound to a
forum-selection clause when it is "'closely related' to the dispute such that it becomes
'foreseeable' that it will be bound" (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209
(7th Cir. 1993))), *with C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc.*, 772 N.W.2d 528,
534-35 (Minn. Ct. App. 2009) (same).  Indeed, Minnesota courts often cite to federal
cases when applying the "closely related" standard.  *See, e.g., Fair Isaac Corp. v. Gordon*,
A16-0274, 2016 WL 7439084, at *1-3 (Minn. Ct. App. Dec. 27, 2016) (applying the
"closely related" standard, citing federal cases, and finding that a non-signatory party
was bound by the forum-selection clause); *C.H. Robinson Worldwide, Inc. v. XPO
Logistics, Inc.*, No. A13-1797, 2014 WL 2565690, at *7 (Minn. Ct. App. June 9, 2014)
(same); *C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc.*, 772 N.W.2d 528, 534-35 (Minn.
Ct. App. 2009) (same).  Thus this Court need not decide whether federal or state law
applies.

-8-

1. ARPwave Austin

ARPwave Austin signed the 2010 agreement and concedes that it is bound by that agreement's forum-selection clause. ARPwave Austin argues, however, that it is not bound by the forum-selection clauses in the 2008 and 2012 agreements because it is not a party to those agreements. The Court disagrees. In the Court's view, ARPwave Austin is so closely related to this dispute that it was foreseeable that the company would be bound by the 2008 and 2012 agreements' forum-selection clauses.

ARPwave Austin is owned and controlled by Salpeter. Salpeter signed the 2008 agreement to lease various devices and treatment methods from ARPwave, and one month later created ARPwave Austin to market the system that he had leased. Salpeter still owned and operated ARPwave Austin when he signed the 2012 agreement, under which he leased new equipment and protocols from ARPwave—equipment and protocols that he marketed through ARPwave Austin.

Clearly, then, ARPwave Austin can be held bound by the forum-selection clauses contained in the 2008 and 2012 agreements, given that those agreements were signed by ARPwave Austin's owner/operator, and given that those agreements conferred rights that the owner/operator exercised through ARPwave Austin. *See, e.g.*, *Universal Credit Services v. Hawkins*, Civ. A. No. 17-799, 2017 U.S. Dist. LEXIS 40795 (E.D. Pa. Mar. 17, 2017) (finding that a non-signatory company allegedly involved in the conduct

underlying the claims was bound to a forum-selection clause agreed to by the non-signatory company's owner and CEO); *Philippe NYC I LLC v. Philippe W. Coast, LLC,* 14 Civ. 9858 (NRB), 2016 WL 1183669 (S.D.N.Y. Mar. 24, 2016) (same); *First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Balt., Inc.,* Civ. A. No. 11-5821, 2012 WL 1150131 (E.D. Pa. April 5, 2012) (same).

### 2. The Neurological Fitness LLCs

The Neurological Fitness LLCs did not sign any of the agreements, but they too are so closely related to this dispute that it was foreseeable that they would be bound by the forum-selection clauses.

ARPwave alleges—and Salpeter has not denied—that "Salpeter exercises full dominion, ownership and operational control over the [Neurological Fitness LLCs]." ECF No. 1 at ¶ 7. Further, ARPwave alleges that the Neurological Fitness LLCs provide the same services that ARPwave Austin provided, using the devices, methods, and protocols that were licensed to Salpeter in the three agreements. *Id.* at ¶¶ 61-63. In fact, ARPwave alleges that the Neurological Fitness LLCs' treatment system is "virtually identical" to ARPwave's and is, in fact, "a converted copy of ARPwave proprietary and patented Systems and technology previously leased and licensed to [Salpeter]." *Id.* Finally, Salpeter has asserted that he created the "Neufit" brand (now marketed by the Neurological Fitness LLCs) in 2009—the same year that Salpeter formed ARP Austin

and began marketing the system licensed from ARPwave.  *Id.* at ¶¶ 39, 45-46, 61-63, 83.

The first of the Neurological Fitness LLCs was not even formed until seven years later.

*Id.* at ¶¶ 61-62, 83.

The facts of this case closely resemble those of *Financial Management Group, Inc. v.*

*University Painters of Baltimore, Inc.*, Civ. A. No. 11-5821, 2012 WL 1150131 (E.D. Pa.

April 5, 2012).  In that case, Michael Herzog leased the rights to operate a painting

business called "University Painters" from First Financial Management Group

("FFMG").  *Id.* at *1.  The contract contained a non-compete clause providing that,

following termination of the contract, Herzog would not operate another painting

business in the United States for three years.  *Id.*  Herzog exercised his rights under the

contract by opening a University Painters business in Baltimore, but, after some

disputes between the parties, FFMG terminated Herzog's contract.  *Id.*  Herzog created

a new painting business in Baltimore—"Perfect Painters"—and began advertising his

services.  *Id.* at *1-2.

FFMG sued Herzog and Perfect Painters.  *Id.* at *1.  FFMG alleged "that Perfect

Painters was a painting business run by [Herzog], working in the geographic area

covered by the broad non-compete clause."  *Id.* at *4.  The court concluded that Perfect

Painters was bound by the forum-selection clause contained in the contract between

Herzog and FFMG, even though Perfect Painters did not exist when that contract was

signed.  The court reasoned that "[b]ecause Perfect Painters is run by the same individuals, doing the same work as [Herzog] received a license to do under the contract with FFMG . . . it . . . is sufficiently related to [Herzog] and the underlying contract such that this Court may enforce the forum-selection clause against it."  *Id.*

The facts of this case are materially indistinguishable.  Here, ARPwave alleges that the Neurological Fitness LLCs are owned and controlled by Salpeter and are using the devices, methods, and protocols that were licensed to Salpeter under the three agreements with ARPwave.  Thus, the Court finds that the Neurological Fitness LLCs are so closely related to this dispute that it was foreseeable that they would be bound by the forum-selection clauses.  To find otherwise would be to allow someone in Salpeter's position to easily evade a forum-selection clause by creating a new LLC and acting through it.  The law is not so toothless.  *See Howmedica Osteonics Corp. v. Bagwell*, Civ. A. No. 16-1980 (JLL), 2016 WL 9185294, at *5 (D.N.J. July 14, 2016).

For these reasons, the Court finds that all four defendants are bound by all three forum-selection clauses.  The next question is which of the claims asserted in this lawsuit fall within the scope of at least one of those clauses.

### B.  Which Claims Fall Within the Scope of the Forum-Selection Clauses?

In order for one of ARPwave's claims to fall within the scope of one of the forum-selection clauses, either (1) that claim must be brought "for the enforcement of

[the 2008 or 2010] Agreement"[3] or (2) that claim must be a claim "relating to [the 2012]

agreement or any related agreements."[4]  ARPwave brings two types of claims:  patent-

infringement claims and non-patent infringement claims.  The Court will consider each

group of claims in turn.

### 1. Patent-Infringement Claims

Under 28 U.S.C. § 1400(b), a patent-infringement action may be brought (1) "in

the judicial district where the defendant resides" or (2) in any judicial district in which

"the defendant has committed acts of infringement and has a regular and established

place of business."  None of the defendants resides[5] in Minnesota, has committed acts of

infringement in Minnesota, or has a regular and established place of business in

Minnesota.  It is clear, then, that ARPwave cannot bring a patent-infringement claim

against any of the defendants in Minnesota under § 1400(b).

---

[3]*See* ECF No. 1-1 at p. 5, ¶ 21 and at p. 9, § 7, ¶ 2 (2008 agreement); ECF No. 1-2 at p. 5, ¶ 21 and at p. 8, § 6, ¶ 2 (2010 agreement).

[4]*See* ECF No. 1-3 at p. 5, ¶ 7.9 (2012 agreement).

[5]It appears that, in the wake of *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), each of the defendant LLCs "resides" in the Western District of Texas, where each LLC has its principal place of business.  *See Maxchief Invs. Ltd. v. Plastic Dev. Grp., LLC*, No. 3:16-cv-63, 2017 WL 3479504, at *1-2 (E.D. Ten. Aug. 14, 2017) (applying the logic of *TC Heartland* to LLC entities and finding that the "residence" of an LLC is its principal place of business).

ARPwave argues that venue nevertheless lies in Minnesota for two reasons: First, ARPwave argues that its patent-infringement claims fall within the forum-selection clauses. Second, ARPwave argues that, even if its patent-infringement claims fall outside of the forum-selection clauses, the *non*-patent-infringement claims fall within those clauses. Given that this Court has venue over the non-patent-infringement claims, ARPwave argues, the Court can exercise "pendent venue" over the patent-infringement claims.

The Court can make quick work of the latter argument. Every court that has addressed the issue following *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), has found that there is no "pendent" venue over a patent-infringement claim unless there is "original" venue over a separate patent-infringement claim under § 1400(b). *See, e.g., Metuchen Pharm. LLC v. Empower Pharm. LLC*, Civ. A. No. 18-11406 (JLL), 2018 WL 5669151, at *4 (D.N.J. Nov. 1, 2018) (refusing to apply the pendent-venue doctrine to a patent-infringement claim); *Nat'l Products, Inc. v. Arkon Res., Inc.*, Case No. C15-1984JLR, 2018 WL 1457254, at *7 (W.D. Wash. Mar. 23, 2018) (same); *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, 16-CV-2205 (VSB), 2017 WL 4997838, at *7 (S.D.N.Y.

Oct. 20, 2017) (same).[6]  The  Court agrees with these decisions, and thus will not exercise

pendent venue over ARPwave's patent claims.

Turning, then, to the forum-selection clauses:

---

[6]A few courts have entertained the notion that if the "primary" claim in a lawsuit is not a patent-infringement claim and the court has venue over that claim, then the court might be able to exercise pendent venue over a "subsidiary" patent-infringement claim.  *See, e.g., Olivia Garden, Inc. v. Stance Beauty Labs, LLC*, Case No. 17-CV-05778-HSG, 2018 WL 3392063, at *2 (N.D. Cal. July 12, 2018); *Cal. Expanded Metal Products Co. v. Klein*, Case No. CV 18-00242 DDP (MRWx), 2018 WL 2041955, at *2 (C.D. Cal. Apr. 30, 2018); *Wet Sounds, Inc. v. Powerbass USA, Inc.*, Civ. A. No. H-17-3258, 2018 WL 1811354, at *3 (S.D. Tex. Apr. 17, 2018).  These cases do not help ARPwave, however:

First, this Court does not agree with these decisions.

Second, even if this Court did agree with these decisions, this Court would not be able to find that it had pendent venue over ARPwave's patent-infringement claims, because those claims are primary, not subsidiary.

And third, even if ARPwave's patent-infringement claims were subsidiary, this Court would still choose not to exercise pendent venue over them.  "Pendent venue, like pendent jurisdiction, aims to promote judicial economy as well as convenience and fairness to the parties."  *Reuber v. United States*, 750 F.2d 1039, 1048 (D.C. Cir. 1984); *see also Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 529 (8th Cir. 1973) (finding pendent venue existed for a certain claim "for essentially the same reasons as there is pendent subject matter jurisdiction" for that claim).  In deciding whether to exercise pendent venue, courts have considered such factors as whether the claims share a common nucleus of operative fact, whether there are common issues of proof, and whether there are similar witnesses.  *See, e.g., Reuber*, 750 F.2d at 1048.  Here, the Court need not look at the agreements to adjudicate the patent-infringement claims, and the Court need not look at the patents to adjudicate the non-patent-infringement claims.  There is not a common nucleus of operative fact, and there are few if any common issues of proof.

As ARPwave conceded at oral argument, its patent-infringement claims are not brought to "enforce" the 2008 or 2010 agreements. Those agreements do not even mention the patents, much less require defendants not to infringe them.

ARPwave contends, however, that its patent-infringement claims fall within the forum-selection clause contained in the 2012 agreement. Again, that clause covers a claim "relating" to the 2012 agreement "or any related agreements" (which likely includes the 2008 and 2010 agreements).[7] Specifically, ARPwave argues that its patent-infringement claims "relate" to the agreements because Salpeter was licensed to use ARPwave's devices under the agreements, those devices were later patented, and defendants then infringed the patents. The Court is not convinced.

---

[7]At the hearing, ARPwave's counsel also argued that the patent-infringement claims fall within the 2012 forum-selection clause because they "arise out of" the agreement. But the "arising out of" language in the 2012 agreement pertains to the jury-trial waiver, not the forum-selection clause. *See* ECF No. 1-3 at p. 5, ¶ 7.9 (". . . all actions or proceedings relating to this agreement or any related agreements must be litigated in [Minnesota] courts . . . . Each of the parties hereto hereby waive their respective rights to a jury trial of any claim or cause of action based upon or arising out of this agreement").

Under Minnesota law,[8] the Court "interpret[s] contract terms consistent with their plain, ordinary, and popular meaning to give effect to the intention of the parties as it appears from the context of the entire contract." *Kremer v. Kremer*, 912 N.W.2d 617, 626 (Minn. 2018) (citing *Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012)). The 2012 forum-selection clause requires "that all actions or proceedings relating to this agreement or any related agreements" be brought in Minnesota. ECF No. 1-3 at p. 5, ¶ 7.9. For a patent-infringement claim to "relate" to the 2012 agreement (or to any other

---

[8]The Eighth Circuit has not been clear about whether the applicability of a forum-selection clause to a particular claim is a question of state or federal law. This Court is inclined to believe that the question is governed by state law. *See, e.g.*, *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181-83 (3d Cir. 2017) (discussing how the question of the scope of a forum-selection clause is a matter of substantive contract interpretation and thus governed by state law); *Martinez v. Bloomberg LP*, 740 F.3d 211, 217-18 (2d Cir. 2014) (same); *but see Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) (stating that "because enforcement of a forum [selection] clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses").

Although the Court applies Minnesota law, the Court would not come to a different conclusion about the scope of the forum-selection clauses if it applied federal law. The Eighth Circuit has cited with approval three different "federal" approaches for determining whether a claim falls within the scope of a forum-selection clause. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 694-95 (8th Cir. 1997). The Eighth Circuit has never adopted one of those approaches, but has instead suggested that choosing an approach is a "case-specific exercise" that depends on which of the approaches is the most "revealing" under the facts of the particular case. *Id.* Here, the Court finds that the Ninth Circuit approach is particularly "revealing." The Ninth Circuit asks "whether resolution of the [tort] claims relates to interpretation of the contract." *Id.* at 694 (quoting *Manetti-Farrow, Inc.*, 858 F.2d at 514). In this case, resolution of the patent claims has nothing to do with interpreting the contracts.

agreement), that claim must concern the agreement or have some sort of relevance, connection, or reference to the agreement. *See, e.g.*, New Oxford American Dictionary (3d ed. 2010) (defining "relate to" as to "have reference to," or "concern"); Random House Webster's Unabridged Dictionary (2d ed. 2001) (defining "related" as "associated; connected"); The American Heritage Dictionary of the English Language (4th ed. 2006) (defining "relate" as "[t]o have connection, relation, or relevance" and "related" as "[b]eing connected; associated").

ARPwave's patent-infringement claims do not "relate" to the 2008, 2010, or 2012 agreements in the ordinary sense of the term. First, none of the agreements says a word about any of ARPwave's patents—which is not surprising, given that none of ARPwave's patents even *existed* until 2014, years after the agreements were signed. The agreements also do not say a word about any patent applications. It is difficult to find that a claim for patent infringement "relates" to a contract that does not say a word about the patent and that was signed years before the patent came into existence.

Second, sometimes a defendant to a patent-infringement claim will argue that it has a license to practice the patent at issue. In such a case, the patent-infringement claim may be said to relate to the license agreement, given that the court may not be able to adjudicate the patent-infringement claim without interpreting the license agreement. But here, there is no indication that any of the defendants will rely on any

of the agreements in defending against ARPwave's patent-infringement claims. To the

contrary, defendants are asserting that the Neubie does not infringe any valid claim of

any patent. Thus, in adjudicating ARPwave's patent-infringement claims, the Court

will not have to enter the 2008, 2010, and 2012 agreements into the record, much less

interpret them.

Under the circumstances, then, the Court finds that ARPwave's patent-

infringement claims do not "relate" to the 2012 agreement or any related agreement.

The Court's conclusion finds support in the decisions of other federal courts[9] who have

addressed the question of whether a patent-infringement claim relates to a license

agreement. Those courts have concluded that a patent-infringement claim does not

relate to a license agreement when the claim can be fully adjudicated without reference

to the agreement. *See, e.g.*, *Sanford L.P. v. Esselte AB*, 14-CV-7616 (VSB), 2015 U.S. Dist.

LEXIS 193868, at *19-24 (S.D.N.Y. Sept. 16, 2015) (discussing how courts concluding that

a patent-infringement claim "relates" to a license agreement have done so "when the

contract's substantive terms have some potential relationship" to the

patent-infringement claims, and finding it unlikely that a forum-selection clause would

apply where there was no such relationship); *see also Comcast Corp. v. Rovi Corp.*,

16-CV-3852 (JPO), 2016 WL 7235802, at *4 (S.D.N.Y. Dec. 14, 2016) (holding that where

_____

[9]Federal courts have exclusive jurisdiction over patent-infringement claims, *see*
28 U.S.C. § 1338(a), and thus no Minnesota state court has addressed this precise issue.

damages are sought for only the time period after a patent-license agreement

expired—and thus when the patent-license agreement would be no defense—it was

unlikely that the patent-infringement claims would be found to "arise under" the

agreement); *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. C 05-4063 CW, 2008 WL

239215, at *3 (N.D. Cal. Jan. 28, 2008) (holding that, when the only issue is whether

products that were undisputedly not licensed to a party in the license agreement

infringe on various patents, it was unlikely that a forum-selection clause applied);

*Accentra, Inc. v. Staples, Inc.*, No. CV 07-5862 ABC (RZx), 2008 WL 7400627, at *2 (C.D.

Cal. Feb. 27, 2008) (refusing to find that patent-infringement claims "relate to" a

manufacturing agreement when the manufacturing agreement would give rise to no

defense and would not otherwise be relevant to the patent-infringement claims).

## 2. Other Claims

In addition to its patent-infringement claims, ARPwave brings claims for breach

of the agreements, as well as claims for misappropriation of trade secrets and

confidential information, conversion, interference with contractual and business

relationships, and unjust enrichment.

Under the agreements, Salpeter (and ARPwave Austin) were obligated not to

disclose trade secrets or confidential information,[10] to return each device at the end of

---

[10]*See* ECF No. 1-1 at p. 8, ¶ 5; ECF No. 1-2 at p. 7, § 4; ECF No. 1-3 at p. 3, ¶ 3.2.

the relevant lease period,[11] to make payments according to particular terms,[12] and not to

compete with ARPwave following the termination of one of the agreements.[13]

ARPwave now alleges that trade secrets and confidential information were disclosed,

that devices were not returned, that payments were missed, and that defendants are

offering the proprietary ARPwave system without a license and in violation of the non-

compete clause.  Given that all of these claims are either explicit breach-of-contract

claims or breach-of-contract claims repackaged as tort claims, the Court finds that all of

these claims are brought to "enforce" or at least "relate to" the agreements, and

therefore are properly venued in Minnesota under the forum-selection clauses in those

agreements.  *See Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc.*, 646 N.W.2d 904, 908

(Minn. Ct. App. 2002) ("when claims involve the same facts as would give rise to a

breach of contract implicating a forum-selection clause, the clause covers such claims"

(*citing Terra Int'l, Inc.*, 119 F.3d at 695)).

---

[11]*See* ECF No. 1-1 at p. 4, ¶ 10; ECF No. 1-2 at pp. 3-4, ¶ 11; ECF No. 1-3 at p. 4, ¶ 7.2.

[12]*See* ECF No. 1-1 at p. 2, ¶ 2; ECF No. 1-2 at p. 2, ¶ 2; ECF No. 1-3 at p. 2.

[13]*See* ECF No. 1-1 at p. 8, ¶ 6 ("Licensee and its officers, affiliate companies, employees, agents and representatives agree not to license, lease, sell, manufacture, or otherwise represent any similar or competitive system or Licensee within the Territory defined in the Exclusive Licensee Agreement executed by the parties, for the duration of this Agreement and then for a period of Two (2) years beyond the termination of this Agreement for whatever reason.").

*C. Conclusion*

The Court has concluded that it does not have venue over ARPwave's patent-infringement claims, and therefore the Court will dismiss those claims without prejudice. The Court has also concluded that it has venue over ARPwave's other claims, and thus the Court will not dismiss those claims for lack of venue. It is not clear, however, whether the Court has subject-matter jurisdiction over those claims. All of the non-patent claims arise under state law, and ARPwave must therefore establish that the Court has diversity jurisdiction over those claims under 28 U.S.C. § 1332. The allegations in ARPwave's complaint fail to establish such jurisdiction. *See Key Enterprises, LLC v. Morgan*, No. 12-CV-2628 (PJS/JSM), 2013 WL 353911, at *1 (D. Minn. Jan. 29, 2013) ("for purposes of diversity jurisdiction, a limited-liability company ('LLC') takes the citizenship of all of its members and 'sub-members' and 'sub-sub-members'"). Accordingly, the Court will order that plaintiffs show cause why this action should not be dismissed for lack of subject-matter jurisdiction.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendants' motion to dismiss [ECF No. 9] is GRANTED in part and DENIED in part as follows:

1.   Defendants' motion is GRANTED with respect to Counts I, II, and III.
     Counts I, II, and III are DISMISSED WITHOUT PREJUDICE for lack of
     venue.

2.   Defendants' motion is DENIED with respect to Counts IV, V, VI, VII, and
     VIII.

3.   Plaintiffs are ORDERED TO SHOW CAUSE why this action should not be
     dismissed for lack of subject-matter jurisdiction.  Plaintiffs must submit a
     memorandum of no more than 3,000 words no later than February 15,
     2019.  Defendants may respond in a memorandum of no more than 3,000
     words by February 22, 2019.

Dated:  January 31, 2019                    s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge