# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ARP WAVE, LLC, a Minnesota Limited
Liability Company,

                Plaintiff,

v.

GARRETT M. SALPETER,
NEUROLOGICAL FITNESS
EQUIPMENT AND EDUCATION,
LLC, a Texas Limited Liability
Company, NEUROLOGICAL FITNESS
AND RECOVERY FACILITIES, LLC,
a Texas Limited Liability Company,
ARPWAVE AUSTIN, LLC, a Texas
Limited Liability Company, and JOHN
DOES I-X,

                Defendants.

Case No. 18-cv-2046 (PJS/ECW)

**ORDER**

---

This matter is before the Court on Defendants Garrett M. Salpeter; Neurological

Fitness Equipment and Education, LLC; Neurological Fitness and Recovery Facilities,

LLC; and ARPwave Austin, LLC's (collectively, "Defendants") Motion for Leave to

Amend their Answer (Dkt. 51). For the reasons stated below, the Court grants in part and

denies in part Defendants' Motion for Leave to Amend their Answer.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

The only substantive changes in the proposed First Amended Answer that the Court can discern pertain to the proposed counterclaim for fraud.[1]  The proposed counterclaim alleges the following supporting facts:

Counter-Plaintiff Garrett M. Salpeter ("Salpeter") and Counter-Defendant ARP Wave, LLC ("ARPwave") began their business relationship in 2006, when Salpeter contacted ARPwave about using one of its devices for himself.  (Dkt. 54, Counterclaim ¶ 5.)

Subsequently, Salpeter and ARPwave, by and through its principal Denis Thompson ("Thompson"), had several discussions regarding Salpeter becoming an ARPwave licensee and affiliate of ARPwave.  (*Id.* ¶ 6.)  In 2008, ARPwave offered Salpeter the opportunity to open a fully supported ARPwave clinic.  (*Id.* ¶ 7.)  ARPwave promised that it would fully support his business in Austin, Texas, and that Salpeter would be the exclusive provider of such services in the greater Austin area.  (*Id.*)  ARPwave also promised that Salpeter would receive all of the treatment protocols that ARPwave had developed, that it would refer all clients in the greater Austin area and other parts of Texas to Salpeter, and that he would receive other support from the company.  (*Id.*)  ARPwave knew those statements were false when it made them and intended for Salpeter to rely on those representations because it wanted him to open and grow an Austin clinic so that it could profit off of the sale of additional machines both that Salpeter would buy for his

---

[1]     Defendants failed to file a red-line version of the proposed First Amended Answer as required by the Local Rules of this District.  *See* D. Minn. L.R. 15.1(b)(2).

clinic and that would be resold to Salpeter's customers.  (*Id.* ¶ 8.)  Relying on these

representations, Salpeter signed an agreement in December 2008.  (*Id.*)  However, that

agreement had several material terms and conditions that are completely blank and were

never filled out by ARPwave.  (*Id.* ¶ 9.)

Beginning in 2014, Salpeter learned that most of ARPwave's representations were

false.  (*Id.* ¶ 10.)  Although Salpeter believed that he was the exclusive dealer in Austin,

ARPwave had been competing secretly and directly against him by selling ARPwave

machines to other practitioners in the Austin market and remotely training those

practitioners on how to use the machines.  (*Id.*)  In addition, ARPwave had not been

referring all potential clients to him, instead servicing those clients directly.  (*Id.*)

ARPwave also promised that Salpeter would receive all of its protocols for

electrotherapeutic treatment, which Salpeter believed he had received.  (*Id.* ¶ 11.)

However, "several years later," when Salpeter asked ARPwave to send him specific

protocols related to post-operation treatments, ARPwave told him that those protocols

were only available for those in the ARPwave corporate office.  (*Id.*)  In late 2013 and

2014, Salpeter further learned that ARPwave had not been referring clients to him in the

Austin market but instead had actually been competing with him.  (*Id.*)  Around the same

time that he discovered ARPwave's other misrepresentations, Salpeter discovered that he

had only been given a small fraction of ARPwave's over 300 treatment protocols

available.  (*Id.*)

ARPwave's misrepresentations damaged Salpeter because he lost business when

ARPwave competed directly against him and did not refer clients to him and forced him

to spend time and resources developing his own protocols because of ARPwave's misrepresentations regarding sharing of its protocols with Salpeter, which ARPwave now asserts in this lawsuit are its proprietary treatment methods and procedures. (*Id.* ¶ 12.) "Salpeter relied on ARPwave's representations and actions [sic] that any protocols he was forced to develop based on ARPwave's refusal to provide to him was Mr. Salpeter's own intellectual property." (*Id.*) Salpeter alleges that ARPwave, for the first time, has asserted that any independent study he performed to develop his own methods and procedures are somehow the property of ARPwave. (*Id.*)

In Count I of the proposed counterclaim, which asserts a claim of fraud, Salpeter alleges that ARPwave made material false representations to him, with the intent that Salpeter rely on those misrepresentations, and that Salpeter reasonably relied on those misrepresentations to his detriment when he entered into the three agreements in order to open and continue to operate his Austin clinic. (*Id.* ¶¶ 14, 15, 18.) In particular, proposed Count I alleges that:

> [P]rior to entering into an agreement to open an ARPwave Clinic in Austin, ARPwave implicitly and/or explicitly represented to Mr. Salpeter that he would be the exclusive provider of its services and products in Austin and central Texas, that it would refer clients to him, that it would provide him with all of its treatment protocols necessary to operate his business (without any contract other than the contracts for equipment he signed), and that ARPwave would fully support his efforts to run a clinic. ARPwave further represented to him (both explicitly and implicitly) that should he develop his own method, procedures, and protocols, that those method, procedures, and protocols would be his own intellectual property and not the property of ARPwave. Mr. Salpeter reasonably relied on these latter representations.

> ARPwave knew those statements were false when it made them and intended Mr. Salpeter to rely on them. ARPwave also failed to correct any misimpressions in Mr. Salpeter's mind concerning the same when ARPwave

4

had a duty to do so. ARPwave stood to benefit if Mr. Salpeter opened an Austin clinic and continued to operate that clinic with ARPwave's manufactured equipment because the agreement required Salpeter to buy equipment and allowed ARPwave to profit based on the additional equipment Mr. Salpeter bought and resold to others from ARPwave.

(*Id.* ¶¶ 15-16.) According to the proposed counterclaim, these misrepresentations harmed Salpeter because ARPwave was secretly competing directly against him resulting in lost business, and because Salpeter was forced to develop his own protocols and other methods of treatment when ARPwave failed to support him. (*Id.* ¶ 18.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. *See, e.g.*, *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted). The Eighth Circuit has held that although amendment of a pleading "should be allowed liberally to ensure that a case is decided on its merits . . . there is no absolute right to amend." *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, 650-51 (8th Cir. 1996) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989); *Chesnut v. St. Louis Cty.*, 656 F.2d 343, 349 (8th Cir. 1981)).

Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted) ("A district court's denial of leave to amend a

complaint may be justified if the amendment would be futile.").  "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended [pleading] could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended [pleading] states a cause of action under the *Twombly* pleading standard . . . ." *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010) (citation and marks omitted); *see also In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) ("[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion.").

On a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must take the well-pleaded allegations of a claim as true, and construe the pleading, and all reasonable inferences arising therefrom, most favorably to the pleader.  *See Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  To survive a motion to dismiss, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In addition, Rule 9(b) of the Federal Rules of Civil Procedure states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  A pleading which alleges fraud or mistake must identify "who, what, where,

when and how." *Bank of Montreal v. Avalon Capital Grp., Inc.*, 743 F. Supp. 2d 1021, 1028 (D. Minn. 2010) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997)). "The purpose of Rule 9(b) is to provide the defendant with notice of and a meaningful opportunity to respond specifically to charges of fraudulent conduct by apprising the defendant of the claims against it and the facts upon which the claims are based." *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2013 WL 3717743, at *6 (D. Minn. July 15, 2013) (citing *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

## III.   <u>ANALYSIS</u>

ARPwave argues that the motion to amend should be denied because Defendants have failed to establish any good cause for bringing the motion after the deadline for such motions expired.  (Dkt. 57 at 5-6.)  In addition, ARPwave argues that the proposed fraud counterclaim is futile.  In support of this assertion, ARPwave makes the following arguments: (1) the fraud counterclaim is based on future promises and not present facts; (2) the fraud counterclaim is barred under the merger clauses within the 2008 Agreements between the parties; (3) the counterclaim lacks sufficient particularity; and (4) the claim is barred by the applicable statute of limitations.  (Dkt. 57 at 6-11.)  The Court will address these arguments in turn.

### A.   **Whether a Showing of Good Cause is Necessary Under Rule 16**

ARPwave argues that because Salpeter moved to amend the Answer to add a counterclaim after the September 15, 2019 deadline for such motions set forth in this Court's Pretrial Scheduling Order, and failed to set forth good cause for the late filing, as

required by Rule 16 of the Federal Rules of Civil Procedure, the motion should be denied. (Dkt. 57 at 3-6.) The Pretrial Scheduling Order in this matter set the deadline to serve and file any motion that seeks to amend the pleadings as September 15, 2019. (Dkt. 28 at 4-5.) The present motion was served and filed on September 16, 2019. (Dkt. 51.)

As set forth in the in the Legal Standard, *supra,* under Rule 15(a), leave to amend should be granted liberally, if "justice so requires." However, the Eighth Circuit has held that when a party files a motion to amend after the deadline provided in a court's pretrial scheduling order, then the court may properly require, pursuant to Federal Rule of Civil Procedure 16(b), that good cause be shown for leave to file a pleading that is out of time with that order. *See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (citing *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999)). "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *In re Milk Prod. Antitrust Litig.*, 195 F.3d at 437-38 (citation omitted).

Rule 6 of the Federal Rules of Civil Procedure provides in relevant part:

The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.

(1) Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time:

* * *

8

<blockquote>
(C)       include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.
</blockquote>

Fed. R. Civ. P. 6(a).

Here, September 15, 2019, fell on a Sunday. At the hearing, counsel for Defendants explained that he believed that under Rule 6, the deadline moved to the next business day—Monday, September 16, 2019. However, the advisory committee notes to the 2009 amendments to Rule 6 provide "[t]he time-computation provisions of subdivision (a) apply only when a time period must be computed. They do not apply when a fixed time to act is set." *Id.* Because the September 15, 2019 date was a "fixed time to act" under the Pretrial Scheduling Order, the advisory committee notes indicate that Rule 6(a) does not apply and the deadline did not move to the next working day.

However, under these circumstances, "[a]dhering to a strict reading of the Rule based on the Advisory Committee Notes seems particularly inequitable and, in this case, prejudicial, as the Court itself set the [Sunday] deadline." *Ewald v. Royal Norwegian Embassy*, Civil No. 11-cv-2116 (SRN/SER), 2013 WL 2631876, at *3 (D. Minn. June 12, 2013). Indeed, this Court's typical practice is to avoid setting deadlines that fall on a Saturday, Sunday, or legal holiday to avoid the situation presented here. Moreover, authorities have recognized that strict application of the "last day" rule is within a court's discretion to manage its own affairs. *See id.* at *3-4 (citing Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 6(a) Practice Commentary (2013 ed.)). Accordingly, recognizing Defendants' counsel's intent to timely file the motion,

and because denying the motion as untimely would likely prompt additional motion practice regarding whether Defendants could show good cause for their September 16 filing in this already contentious case, the Court exercises its discretion and finds Defendants' motion was timely filed.

**B.     Whether the Alleged Fraud Consists of Unenforceable Future Promises**

ARPwave asserts that the fraud counterclaim is futile because Salpeter's proffered misrepresentations are entirely in the form of purported unactionable future promises, including promises of an exclusive territory, referrals of clients, and support and training from ARPwave.  (Dkt. 57 at 7.)

"In order to support a fraud claim under Minnesota law, a misrepresentation must relate to a past or present fact."  *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997) (citation omitted).  Further, "[i]t is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place."  *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000) (quotation marks and citation omitted).  However, a representation of a future act may support a claim of fraud where there is affirmative proof that at the time the promise was made the promisor had no intention to perform.  *Id.*; *see also EAS Grp., Inc. v. FiberPop Sols., Inc.*, No. 14-MC-0020 PJS/TNL, 2015 WL 3654323, at *4 (D. Minn. June 11, 2015) (quoting *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368-69 (Minn. 2009), quoting *Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974)) ("'It is true that a misrepresentation of a present intention could amount to fraud.  However, it must be

made affirmatively to appear that the promisor had no intention to perform at the time the promise was made.'").  Applying *Vandeputte*, courts have concluded that entering into an agreement without a present intent to perform is actionable fraud.  *See, e.g.*, *Alexander v. Bond*, No. 04-1323, 2005 WL 2406031, at *7 (D. Minn. Sept. 29, 2005).

Salpeter alleges in the proposed counterclaim that ARPwave "promised" that: (1) it would fully support his business in Austin, Texas and that Salpeter would be the exclusive provider of such services in the greater Austin area; (2) he would receive all of the treatment protocols that ARPwave had developed; and (3) ARPwave would refer all clients in the greater Austin area and other parts of Texas to Salpeter.  (Dkt. 54, Counterclaim ¶¶ 7, 11.)  The proposed counterclaim alleges:

> ARPwave knew those statements were false when it made them and intended for Mr. Salpeter to rely on those representations because it wanted him to open and grow an Austin clinic so that it could profit off of the sale of additional machines both that Mr. Salpeter would buy for his clinic and that would be resold to Mr. Salpeter's customers.

(*Id.* ¶ 8.)  Courts have concluded that a failure to allege no intention to perform at the time a promise was made is fatal to a fraud claim based on a promise.  *See, e.g.*, *Martens*, 616 N.W.2d at 747 ("Further, the complaint is devoid of any specific claim that appellant's statements were representations the appellant knew were false or had no intention of fulfilling at the time they were made."); *Capital Midwest Fund, LP v. Johnson*, No. A13-2023, 2014 WL 3396580, at *7 (Minn. Ct. App. July 14, 2014) ("Therefore, because appellants did not plead this additional element, appellants' fraud claim based on future actions was not pleaded with adequate particularity.").  Other courts have suggested that a party must articulate with sufficient particularity a reason

why a tortfeasor would have made a promise without intending to fulfill that promise.

*See, e.g., Raden v. BAC Home Loans Servicing, LP*, No. 12-CV-1240 PJS/TNL, 2013 WL 656624, at *4 (D. Minn. Feb. 22, 2013).  The Court finds that the latter approach is more consistent with Rule 9(b), as well as *Iqbal*, which has rejected the notion that formulaic recitation of elements are sufficient and has concluded that claim has facial plausibility when a claimant pleads factual content that allows a court to draw reasonable inference that defendant is liable for misconduct alleged.  *See Iqbal*, 556 U.S. at 678.

Here, not only does the counterclaim allege that ARPwave knew its promises were false when it made them,[2] *see Martens*, 616 N.W.2d at 747, which the Court reads no differently from stating that ARPwave had no present intention of fulfilling the promises at the time they were made, but it also sets forth with sufficient particularity that the alleged false promises were made in order to get Salpeter to open and grow an Austin clinic so that ARPwave could profit off of the sale of additional machines both that Salpeter would buy for his clinic and that would be resold to Salpeter's customers.  In other words, the proposed counterclaim plausibly sets forth ARPwave's intent regarding why it allegedly made the false promises to Salpeter before he agreed to enter into the written agreements.  (Dkt. 54, Counterclaim ¶ 8.)  While Salpeter will ultimately need to

---

[2]    In *Capital Midwest Fund*, plaintiffs alleged that "[s]aid [defendants] knew that these representations were false **or made these representations as of their own knowledge without knowing whether they were true or false**."  2014 WL 3396580, at *7 (emphasis added).  Here, the proposed counterclaim alleges that ARPwave "knew those statements were false when it made them" without an alternative allegation that ARPwave did not know whether the statements were true or false.  (Dkt. 54, Counterclaim ¶ 16.)

present "affirmative evidence" that ARPwave had no intention of performing the promises at issue at the time they were made, *see International Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1403 (8th Cir. 1993), the Court finds that the claim as pleaded is not futile.

## C.    Particularity

ARPwave also argues in a cursory footnote that the allegations do not satisfy Rule 9(b) because Defendants "are not even willing to allege the form of these misrepresentations, instead claiming that 'ARPwave **implicitly and/or explicitly**'" made promises.[3] (Dkt. 57 at 7 & n.1.)  However, this "implicitly and/or explicitly" allegation was made in the actual claim of fraud and ignores the proposed counterclaim's fact section where it is alleged that in 2008, Salpeter and Thompson had conversations regarding Salpeter becoming a licensee and affiliate of ARPwave and that it was during these conversations that ARPwave made the alleged explicit promises at issue.  (Dkt. 54, Counterclaim ¶¶ 7, 11.)  While ARPwave is correct that Defendants have not adequately alleged with sufficient particularity a viable fraud claim involving "implicit promises," the explicit promises set forth in the fact section are pled with sufficient particularity.  As such, Defendants **shall omit** from their Amended Answer and Counterclaim any

---

[3]    ARPwave's footnote regarding the particularity of "and/or" is the only argument it made based on Rule 9(b)'s particularity requirement.

reference to ARPwave making implicit representations in paragraph 15 of the proposed counterclaim.

**D.      Merger and Waiver Clauses**

ARPwave argues that the merger and waiver clauses in the written agreements between the parties preclude Salpeter from asserting the proposed fraud counterclaim. (Dkt. 57 at 8-10.)  ARPwave relies on the December 19, 2008 ARP Wave Clinic Master Lease and License Agreements ("2008 Agreements"), the May 25, 2010 ARP Wave Clinic Individual Lease and License Agreement ("2010 Agreement"), and the March 6, 2012 Bronze License Agreement ("2012 Agreement") between the parties regarding the lease of equipment and license of protocols.  (Dkt. 57 at 8.)

The 2008 Agreements contain the following integration clauses: "[t]his Lease constitutes the entire agreement between the parties hereto" and "[t]his Agreement and exhibits thereto, constitutes the entire agreement between the parties regarding the subject matter hereof."  (*See* Dkt. 1-1 at 5 ¶ 18, Dkt. 1-1 at 9, Section 8.)  The 2010 and 2012 Agreements contain similar integration clauses.  (Dkt. 1-2 at 5 ¶ 18; Dkt. 1-2 at 8, Section 7; Dkt. 1-3 at 5, Section 7.7.)

In addition, all of these Agreements contain the following waiver provision (with one inconsequential difference as to the 2012 Agreement):

> Without limiting the aforesaid, Licensee hereby waives any and all claims or rights or causes of action it has or in the future may have of any nature whatsoever, against Licensor, except for any breach or breaches of Licensor's contractual obligations herein set forth.  Licensee hereby waives all rights at law and equity to claim fraud, inaccuracy, imperfection of the System(s) herein claimed, or seek any consequences, damages or any form of redress with respect to said property.

(Dkt. 1-1, Section 10 ¶ 3; Dkt. 1-2, Section 9 ¶ 3; Dkt. 1-3, Section 4 ¶ 4.2.)

ARPwave relies upon *Corp. Commission of Mille Lacs Band of Ojibwe Indians v. Money Centers of America, Inc.*, No. CIV. 12-1015 RHK/LIB, 2013 WL 5487419, (D. Minn. Sept. 30, 2013), for the proposition that the integration clause in the various agreements between the parties in this case precludes the proposed counterclaim of fraud. (Dkt. 57 at 9.)  The court in *Money Centers of America* held that "[w]hile an integration clause may preclude a party from seeking to enforce a promise not contained in the agreement, it does not ordinarily preclude claims of fraud."  2013 WL 5487419 at *6 (citing 37 Am. Jur. 2d Fraud & Deceit § 315).  "One exception is integration clauses that specifically mention and disclaim the parties' 'reliance' on prior statements."  *Id.* (citing 37 Am. Jur. 2d Fraud & Deceit § 316) ("Although fraud in the inducement is separable from the terms and conditions of a contract, and ordinarily would not preclude an action for fraud based on false inducement, where the contract specifically disclaims reliance upon any representations not set forth in the contract . . . a claim in fraud . . . may be barred.").  The integration clause at issue in *Money Centers of America* provided: "This Agreement constitutes the entire understanding and agreement between the parties and supersedes any and all prior negotiation, correspondence and undertakings between the parties with respect to the subject matter herein."  *Id.*  The court went on to hold that because the parties did not specifically disclaim their reliance upon prior representations, the integration clause did not bar the fraud claim.  *Id.*  In this case, the integration clauses relied upon by ARPwave, which provide that the agreements and their exhibits constitute

the entire agreement between the parties regarding their subject matter, are even more barebones than the clause found not to bar a fraud claim in *Money Centers of America*. Thus, the Court concludes that the integration clauses do not bar the proposed fraud counterclaim.

As to the waiver provision, Minnesota courts "have held on many occasions that contractual disclaimers do not, as a matter of law, relieve those accused of fraud of liability." *Randall v. Lady of Am. Franchise Corp.*, 532 F. Supp. 2d 1071, 1100 (D. Minn. 2007) (string citation omitted); *see also Ganley Bros., Inc. v. Butler Bros. Bldg. Co.*, 170 Minn. 373, 212 N.W. 602, 603 (1927) ("The law should not and does not permit a covenant of immunity to be drawn that will protect a person against his own fraud."). Accordingly, the Court concludes the waiver language in the integration clauses does not render the proposed counterclaim futile.

Although it is not entirely clear, it appears that ARPwave is also arguing that the fraud claims are barred by the parol evidence doctrine. ARPwave asserts that the promises set forth in the proposed counterclaim directly contradict the language in the 2008, 2010, and 2012 Agreements providing Salpeter with a non-exclusive license for the use of the ARPwave systems and contradict the language regarding the ownership of improvements of the equipment or protocols. (Dkt. 57 at 8-9.) "In Minnesota, only when an allegedly fraudulent statement directly contradicts a substantive contract term will courts rely on the parol-evidence rule to reject a fraud claim." *Randall*, 532 F. Supp. 2d at 1083. This direct-contradiction test is applied narrowly. *Id.* at 1084. "When a promise is not in plain contradiction of a contract, or if contradictory, when it is

accompanied by misrepresentations of other material facts in addition to the contradictory intent the question of reliance is for the trier of fact." *Commercial Prop. Investments, Inc. v. Quality Inns Int'l, Inc*., 938 F.2d 870, 876 (8th Cir. 1991) (quoting *Johnson Bldg. Co. v. River Bluff Dev. Co.*, 374 N.W.2d 187, 193 (Minn. Ct. App. 1985)) (citation omitted).  Moreover, the rule is subject to exceptions not addressed by ARPwave, including that "the parol evidence rule is inapplicable to exclude evidence of fraudulent oral representations by one party which induce another to enter into a written contract," *Johnson Bldg. Co.* 374 N.W.2d at 193 (string citation omitted); and the layperson exception where a party makes a representation which a signed document contradicts, the person to whom the representation was made is justified in relying upon it where a document couched in ambiguous legal language which a layman could reasonably believe supported the representation, *see Randall*, 532 F. Supp. 2d at 1085 (citation omitted).

The 2008, 2010, and 2012 Agreements all refer to a "non-exclusive license related to ARPwave's systems (Dkt. 1-1 at 7, Section 2 ¶¶ 1-2; Dkt. 1-2 at 6; Dkt. 1-3 at 2, Section 1.2.), which directly contradicts the contention that ARPwave represented to Salpeter that he would be the exclusive provider of its services and products in Austin and central Texas.  That said, the Agreements do not appear to directly contradict the allegations that ARPwave promised to fully support Salpeter's ARPwave clinic, refer patients to him, or provide him with all of the ARPwave protocols.  (Dkt. 54, Counterclaim ¶¶ 7, 11, 15.)  This, coupled with the fact that there are possible applicable exceptions to the application of the parol evidence rule, given Salpeter's contention that

the representations induced him into entering into at least the 2008 Agreements (*id.* ¶¶ 14-18), leads this Court to find that, while Defendants may prevail on this argument at summary judgment, the fraud counterclaim is not futile based on the pleadings.

**E.     Whether the Proposed Counterclaim Is Barred by the Statute of Limitations**

ARPwave also contends that the proposed fraud counterclaim is based on conversations and misrepresentations attributed to ARPwave that took place in 2008 and resulted in the 2008 Agreements, and therefore, the proposed counterclaim is futile as barred by the applicable six-year statute of limitations.  (Dkt. 57 at 10.)

Under Minnesota law, "[t]he 6-year fraud statute of limitations begins to run when the aggrieved party discovers the facts constituting the fraud."  *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 172 (Minn. 2012) (citing Minn. Stat. § 541.05, subd. 1(6)).  Here, the proposed Counterclaim alleges that Salpeter first learned about the alleged false representations in late 2013 through 2014.  (Dkt. 54, Counterclaim ¶¶ 10-11.)  "As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the [pleading] itself establishes the defense." *Joyce v. Teasdale*, 635 F.3d 364, 367 (8th Cir. 2011).  ARPwave does not argue that the proposed counterclaim does not relate back to the original April 2, 2019 Answer.  *See* Fed. R. Civ. P 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when . . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading. . . .").  Based on the allegations in the proposed counterclaim that Salpeter

discovered the fraud at issue in late 2013 into 2014, the Court cannot find that the claim is futile under the applicable six-year statute of limitations.

The Court acknowledges ARPwave's argument that Defendants could have and should have discovered that ARPwave was actively soliciting practitioners and providers nationwide and was not funneling all of its business in the entire State of Texas to Salpeter.  (Dkt. 57 at 11.)  Indeed, "[t]he facts constituting the fraud are deemed to have been discovered when they were actually discovered or, 'by reasonable diligence, should have been discovered.'"  *Doe*, 817 N.W.2d at 172 (quoting *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985)).  This is an objective and not subjective standard.  *Id.* However, this is a fact-specific inquiry and should be decided on a motion for summary judgment, not on a motion to amend the pleadings.

## IV.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT**

1.    Defendants Garrett M. Salpeter, Neurological Fitness Equipment and Education, LLC, Neurological Fitness and Recovery Facilities, LLC, and ARPwave Austin, LLC's Motion for Leave to Amend their Answer (Dkt. 51) is **GRANTED** in part and **DENIED** in part.

2.    Defendants shall file their Amended Answer and Counterclaim, consistent with this Order, on **March 10, 2020**, unless an appeal of this Order is sought.

3.    Plaintiff shall respond to the Amended Answer and Counterclaim in accordance with the Federal Rules of Civil Procedure.

Date: February 24, 2020

*s/ Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge